**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAO CRESCENZO | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | No. 07-01512 |
| | : | |
| HAJOCA CORPORATION, d/b/a | : | |
| WEINSTEIN SUPPLY COMPANY | : | |
| | : | |
| Defendant | : | |

**<u>MEMORANDUM AND ORDER</u>**

**Joyner, J.**                                    **April 16, 2008**

Presently before the Court is Defendant Hajoca Corporation's ("Hajoca" or "Defendant") Motion for Summary Judgment ("D. Mot.") (Doc. No. 9), Plaintiff's Response ("P. Resp.") (Doc. No. 10) and Defendant's Reply ("D. Rep.") (Doc. No. 11).  For the reasons set forth below, the Court GRANTS in PART and DENIES in PART Defendant's motion.

**Background**

Defendant Hajoca Corporation is a privately held wholesale distributor of plumbing, heating and industrial supplies that operates its business in a decentralized manner across a series of profit centers.  Plaintiff Dao Cresenzo began working for Hajoca as a sales consultant in its Lansdowne, Pennsylvania Profit Center on March 10, 2003.  The Lansdowne Profit Center is

managed by Robert "Luke" Sheridan who was Plaintiff's immediate supervisor throughout the course of her employment.  Although Plaintiff maintained a desk and computer station at the Center, she spent the majority of her time outside of the office on sales visits with new and existing company clients.

Plaintiff claims that throughout the course of her employment, she was subjected to sexual harassment and/or sexual discrimination by her supervisor, Luke Sheridan, as well as other male co-workers, ultimately forcing her to resign her position with the company on November 21, 2005.  (Pl. Compl. at ¶ 18.)

On January 30, 2006, Plaintiff, accompanied by her attorney, visited the Equal Employment Opportunity Commission ("EEOC") and filled out several questionnaires that the EEOC utilized to investigate her claims.  In those questionnaires, Plaintiff described three alleged incidents of discrimination against her by Mr. Sheridan, occurring in December 2004, September 2005 and November 2005.  The following day, Plaintiff filed a formal Charge of Discrimination with EEOC and the Pennsylvania Human Rights Commission ("PHRC").  The EEOC completed its investigation of Plaintiff's Charge on December 28, 2006 and was unable to conclude that the information obtained during its investigation established a statutory violation.

On March 28, 2007, Plaintiff filed a four count claim against Defendant in the Court of Common Pleas of Delaware

2

County, Pennsylvania alleging companion claims under state and federal law for: (1) sex discrimination based on a hostile work environment resulting in constructive discharge and (2) retaliation.  Defendants subsequently removed the case to federal court and now move for summary judgment on all of Plaintiff's claims.  We will review each claim in turn.  As an initial matter, we note that we apply the same legal standard for claims brought under the PHRA as we do for claims brought under federal anti-discrimination laws addressing the same subject matter.  See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).  Thus, our analysis of, and decision on, Plaintiff's discrimination claims under Title VII apply equally to her claims under the PHRA, as they are based on the same alleged conduct.

### Standard for Summary Judgment

It is recognized that the underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense.  Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976).  Summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is genuine only if there is sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute

3

is material only if it might affect the outcome of the suit under governing law.  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  If the non-moving party bears the burden of persuasion at trial, "the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden."  Id., quoting Wetzel v. Tucker, 139 F.3d 380, 383 n. 2 (3d Cir. 1998).  In conducting our review, we view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  See Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000).  However, there must be more than a "mere scintilla" of evidence in support of the non-moving party's position to survive the summary judgment stage.  Anderson, 477 U.S. at 252.


**A:   Hostile Work Environment**

To support a claim of discrimination under the hostile work environment framework, Plaintiff must prove the following: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability exists.  See Jensen v. Potter, 435 F. 3d 444 n. 3 (3d. Cir. 2006); Kunin v. Sears

Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999), cert. denied, 528 U.S. 964 (1999).  Defendant argues that Plaintiff's allegations regarding the frequency and nature of the comments made by Mr. Sheridan cannot, as a matter of law, support a hostile work environment claim because she cannot establish that any sufficiently severe or pervasive harassment occurred.  (D. Mot. at 15-16).

The Supreme Court has explained that "in order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998)(citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993)).  In determining whether an environment is sufficiently hostile or abusive to support a claim of discrimination, courts are directed to examine the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 787-88 (quoting Harris, 510 U.S. at 23)).  The Supreme Court has further explained that Title VII does not prohibit "genuine but innocuous differences in the ways men and women routinely interact with members of the same

5

sex and of the opposite sex." Oncale v. Sundowner, 523 U.S. 75, 81 (1998).

Plaintiff bears the burden of showing that the alleged harassment was severe or pervasive.  In her EEOC Charge of Discrimination, she outlined three incidents of harassment to support her hostile work environment claim.  Plaintiff's Charge states, in relevant part:

> I was hired on March 10, 2004 as an Outside Sales Person. Since December 2004 and continuing to November 17, 2005, I have been subjected to inappropriate comments that created a hostile work environment.  In December 2004, Luke Sheridan, Branch Manager placed a picture as a screensaver on several computer [sic] and made the comment to me that the picture looked like Mike Sousa was "penetrating me from the back." I informed him that I did not appreciate this and to remove the picture a [sic] a screensaver.  In September 2005, I received braces.  Luke stated in front of a customer and several male co-workers "did you see Dao's braces, poor Bill."  A co-worker stated "Bill (my husband) must have to wear a tourniquet on his d--k."  On November 17, 2005, Luke sat at my desk and emailed the males [sic] employees stating "I can't wait to rub my boobs all over you."  I complained about this to Paul Weinstein.  He said that he would look into the matter.  But to my knowledge no action was ever taken.  Due to the humiliation and intimidation [sic], I was forced to resign on November 21, 2005.

(Pl. Resp. at Ex. 10.)

As a preliminary matter, Defendant argues that the December 2004 incident should not be considered in support of Plaintiff's hostile work environment/constructive discharge claim because it is time-barred.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 (3d Cir. 1994) (requiring claims to be brought before a state or local agency within 300 days from the date of

the alleged discrimination).  The December 2004 incident occurred less than a month before Plaintiff took a seven month maternity leave, which began in January 2005.[1]

While we agree with Defendant that this incident falls outside of the prescribed 300 day period and would ordinarily be time-barred, we concur with Plaintiff that it may be considered under the continuing violation doctrine.[2]  Under that doctrine, a Title VII plaintiff may pursue a claim for discriminatory conduct that occurred outside the filing period if she can demonstrate (1) that the act is part of an ongoing practice or pattern of discrimination of the defendant; and (2) the harassment is "more than the occurrence of isolated or sporadic acts of intentional discrimination."  West v. PECO, 45 F. 3d 744,754 (3d Cir. 1995).

With regard to the first requirement under West, that at least one act of discrimination occurred within the filing period, there is no dispute between the parties that the September and December 2005 incidents Plaintiff raised in her

---

[1]Plaintiff does not allege that she experienced any discrimination during her maternity leave.

[2]We refuse to consider, however, incidents that were not included in Plaintiff's EEOC Charge of Discrimination.  An action filed under Title VII requires a Plaintiff to have exhausted her administrative remedies.  See Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996). Accompanied by counsel at the time she filed her charge, Plaintiff explicitly described three incidents of harassment against her by Mr. Sheridan.  Now, in this lawsuit, she endeavors to include other incidents to support her claim, including alleged harassment by other co-workers.  We will not consider those facts as Plaintiff had the opportunity to raise those facts in her EEOC Charge, but failed to do so.

EEOC Charge were timely.

Regarding the second inquiry, that the acts complained of must constitute more than the occurrence of "isolated or sporadic acts of intentional discrimination", courts have repeatedly considered the following factors to assess whether an ongoing pattern of discrimination exists: 1) subject matter - whether the violations constitute the same type of discrimination; (2) frequency - whether the acts are recurring or isolated in nature; and (3) permanence - whether the acts had a degree of permanence which should trigger plaintiff's awareness of the need to assert her rights and whether the consequences of the acts would continue even in the absence of a continuing intent to discriminate.  West, 45 F.3d at 777 n.9.

Applying the first factor, we agree with Plaintiff that the December 2004 incident was sufficiently similar in subject matter to the later incidents.  All of the comments directed at Plaintiff were made by Mr. Sheridan, Plaintiff's supervisor, and were overtly sexual in nature.  They were also communicated in public forums so that Plaintiff's colleagues could hear and/or read the remarks.

With respect to the frequency requirement, Defendant argues that the time period between the December 2004 incident and the subsequent incidents was "sufficient to interrupt any period of harassment which predated the [maternity] leave."  (D. Mot. at

13).  Thus, they argue that we should not consider an incident
predating Plaintiff's maternity leave.  Id.  To support this
argument, Defendant cites the Third Circuit's decision in
Kostantopoulos v. Westvaco, 112 F. 3d 710, 716 (3d. Cir. 1997)
where the court affirmed the district court's decision that an
plaintiff/employee's seven month medical leave was sufficient to
"dissipate" the effects of any harassment that took place prior
the employee's leave.  One of the key factors that the court
considered in reaching its conclusion was that the discrimination
that the employee faced upon her return from medical leave was
"not particularly severe" as compared to the incidents of
discrimination that she alleged prior to taking leave.  Id. at
715-716.

    Other courts in this district have affirmed the significance
of taking into account the severity of the harassment an employee
faced upon returning from leave in assessing whether a pre-leave
incident of discrimination may be linked to later timely acts.
Sicilades v. Pathmark Stores, Inc., 2000 U.S. Dist. LEXIS 8051 at
*18-19 (E.D. Pa. June 12, 2000).  In Sicilades, the court
described the critical importance of evaluating both the passage
of time and the severity of later incidents:

> Under similar facts, in Konstantopoulos, the Third
> Circuit held that timely acts of harassment after
> nearly seven months, which consisted of mute gestures
> by male coworkers' squinting their eyes and shaking
> their fists, were not particularly severe, and
> therefore could not be linked to timely acts.

9

> Accordingly, in the instant case, the passage of time between alleged incidents combined with the relatively innocuous nature of the August 1997 incident precludes the application of the continuing violation theory...

Id. (Internal citations omitted).

We agree with Plaintiff the two incidents of harassment that she experienced following her return from her maternity leave were indeed severe, the first occurring less than a month after she returned to work.  (Pl. Mot. at 25.)  Despite the fact that Plaintiff informed Mr. Sheridan that she found his comments inappropriate in December 2004, his comments did not cease.  (Pl. Dep. at 27-28.)  In September 2005, Mr. Sheridan again subjected Plaintiff to sexual innuendo in front of a male co-worker, who then made a similar comment.  Then, two months later, Mr. Sheridan sent an email describing Plaintiff's anatomy to her co-workers *from Plaintiff's own email account and unbeknownst to her.*

For these reasons, we will consider the December 2004 comment made by Mr. Sheridan under the continuing violation theory in evaluating Plaintiff's claims.

Aware that we might allow the December 2004 to be introduced, Defendant nevertheless argues that the collective "two or three events over eleven months do not constitute severe or pervasive harassment" and Defendant is thus entitled to summary judgment on Plaintiff's hostile work environment claim.

10

(D. Mot. at 15.)  We disagree and find that a reasonable jury could conclude that Plaintiff was subject to severe and/or pervasive sexual harassment during her employment.

The record shows that Mr. Sheridan made overtly sexual comments referencing Plaintiff's anatomy on three separate occasions.  While the first incident occurred seven months prior to the second two, we believe that a jury could conclude that a key reason why Plaintiff did not experience any harassment while she was on leave was because she was not physically present at the Lansdowne facility.[3]  Upon her return to work, Mr. Sheridan continued to make gender based remarks to and about Plaintiff.

Even more egregiously, Mr. Sheridan *publicly* shared all three remarks with her colleagues.  Plaintiff testified that following the circulation of the November 2005 email by Mr. Sheridan from her email account, some of her co-workers initially thought she had sent the email and confronted her about it.  (Pl. Dep. at 43-44.)  The fact that Mr. Sheridan made inappropriate comments to Plaintiff almost immediately after she returned from maternity leave and again less than two months later is arguably severe and pervasive behavior upon which a reasonable jury could conclude that Plaintiff was subjected to a hostile work environment.  We therefore deny Defendant's motion for summary

---

[3]Plaintiff testified that she did not visit the facility while she was on maternity leave.  (Pl. Dep. at 108-109.)

judgment on this claim.

**B.   Constructive Discharge**

Defendants have also moved for summary judgment on Plaintiff's claim that she was constructively discharged.  As Plaintiff bears the burden of showing that she was constructively discharged based on a hostile work environment, she must show that Defendant knowingly permitted conditions of discrimination in the workplace, and that those conditions of discrimination rendered her working conditions "so intolerable that a reasonable person would have felt compelled to resign."  Pa. State Police v. Suders, 542 U.S. 129, 134 (2004); Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1084 (3d Cir. 1996).

Defendant argues that Plaintiff's constructive discharge claim fails as a matter of law because she "resigned instead of cooperating with the Company's investigation of her complaint." (Mot. at 12-13.)  We agree.

Although not an exhaustive list, courts have considered the following factors in determining whether an employee was constructively discharged: (1) threat of discharge; (2) suggestions or encouragement of resignation; (3) a demotion or reduction in pay or benefits; (4) involuntary transfer to a less desirable position; (5) alteration of job responsibilities; and (6) unsatisfactory job evaluations.  Clowes v. Allegheny Valley Hosp., 991 F. 2d 1159, 1161 (3d Cir. 1993).

Plaintiff admits that she first informed a member of management about the email that Mr. Sheridan circulated to her co-workers from Plaintiff's email account on November 21, 2005 when she spoke with Paul Weinstein, Hajoca's Regional Manager. (Pl. Dep. at 54-5).  During that conversation, Plaintiff informed Mr. Weinstein that she was resigning from the company. Id.

Despite Plaintiff's resignation, Mr. Weinstein contacted Lee Comier, Hajoca's Manager of Benefits and Personnel, that same day so that she could commence a formal investigation.  Ms. Comier contacted and interviewed Plaintiff the following day and Plaintiff agreed to review, revise and sign a statement that Ms. Comier prepared summarizing the incident.

Based upon those events, we cannot conclude that Defendant knowingly allowed harassment by Mr. Sheridan to continue such that it became intolerable.  Plaintiff left Defendant's employ of her own volition before an investigation could be carried out and any necessary remedial action taken.  Further, Plaintiff does not argue that the terms or conditions of her employment changed or that any of the factors enumerated under Clowes are present in her case.  In fact, Plaintiff testified at her deposition that she never suffered a change in pay or benefits during her course of employment nor was she demoted, reassigned or transferred. (Pl. Dep. at 124-5).

Plaintiff simply has not presented sufficient evidence to

13

survive a motion for summary judgment on her constructive discharge claim.  We find it unreasonable as a matter of law that she resigned from the company the same day that she first reported Mr. Sheridan's conduct to his supervisor.  Further, despite Plaintiff's resignation from the company, Defendant continued to pursue an investigation into the matter.  Under these circumstances, we find that a reasonable employee would not have been compelled to resign and defendant is entitled to summary judgment as a matter of law on this claim.

**B.  Retaliation**

Plaintiff also claims that Defendant took retaliatory action against her in violation of Title VII when, after complaining to Mr. Sheridan about unlawful sexual harassment and/or discrimination, both he and other co-workers retaliated against her by "persisting with and/or increasing the frequency, amount and intensity of their sexually harassing and/or sexually discriminatory actions..." (Complaint at ¶ 30-31).

Title VII and the PHRA make it unlawful for an employer to discriminate against an employee who has opposed practices made illegal by Title VII or the PHRA, or because she participated in an investigation or proceeding under those statutes.  See 42 U.S.C. § 2000e-3(a), and the PHRA, 43 Pa. Cons. Stat. § 955(d).

In order to succeed on a claim of unlawful retaliation, a plaintiff must demonstrate: (1) that she engaged in an activity

14

protected by Title VII; (2) after or contemporaneous with engaging in that conduct, her employer took an adverse action against her; (3) such adverse action was "materially adverse"; and (4) a causal link exists between her participation in the protected activity and the employer's adverse action.  See Hare v. Potter, 220 Fed. Appx. 120, 127 (3d Cir. 2007)(citing Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2415 (2006)).  To satisfy the third "material adversity" prong, a plaintiff must prove that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Id. at 128.  If plaintiff establishes a prima facie case of retaliation, the burden then shifts to Defendant to advance a legitimate, nonretaliatory or nondiscriminatory reason for its actions.  Id. at 127.  If Defendant has done so, the burden shifts back to Plaintiff to prove that the nonretaliatory or nondiscriminatory reason is merely a pretext for discrimination.  Id.

As we noted earlier, however, a Plaintiff must have exhausted her administrative remedy with regard to a particular claim prior to raising it in a Title VII lawsuit.  See Antol, *supra* note 2.  Where a claim has not been previously presented to the EEOC, the test to determine whether it may be presented to a district court is "whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC

15

complaint, or the investigation arising therefrom." Id.

Plaintiff does not argue that her Charge before the EEOC explicitly stated that she was retaliated against by Defendant. Instead, she claims that her claim for retaliation falls within the scope of her prior EEOC complaint because she included language in her January 30, 2006 EEOC Questionnaire describing her fear of potential retaliation by Defendant. The question and Plaintiff's answer are as follows:

> Q:   If you were subjected to unwanted harassment, was your employment status in any way threatened if you did not go along with the harassment? For example, did the harasser tell you that you would be discharged, would receive lower evaluation, would not receive a pay raise or promotion? If your answer is yes, provide specifics about what was told to you.

> A:   He [Luke Sheridan] never told me, but his actions makes [sic] you very aware, that if you report him to his supervisor, [h]e would try to find a way to terminate you.

(Pl. Resp. at Ex. 10).

We do not agree that Plaintiff's answer describing potential retaliation by Defendant suggests her current claim falls "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Antol, 82 F.3d at 1295. Plaintiff's response to the EEOC's question is purely speculative and fails to describe any actual adverse action taken by her employer. Moreover, this Court has previously recognized that an EEOC Questionnaire, unlike a formal EEOC Charge of

16

Discrimination, does not provide a Defendant with adequate notice that a claim has been raised against it.  See <u>Beverly v. Desmond Hotel</u>, 2004 U.S. Dist. LEXIS 4374 at *6.

As such, because Plaintiff has failed to exhaust her administrative remedy on her claim for retaliation, she is barred from now raising it.   Accordingly, we must grant Defendant's Motion with respect to this claim.

**C:  Conclusion**

For all of the reasons set forth above, Defendant's Motion for Summary Judgment is granted in part and denied in part pursuant to the attached order.

17

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAO CRESCENZO | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | No. 07-01512 |
| | : | |
| HAJOCA CORPORATION, d/b/a | : | |
| WEINSTEIN SUPPLY COMPANY | : | |
| | : | |
| Defendant | : | |

**ORDER**

AND NOW, this 16th  day of April, 2008, upon consideration of Defendant's Motion for Summary Judgment, and the responses thereto, for the reasons stated in the accompanying memorandum, it is hereby ORDERED that the Motion is GRANTED IN PART and DENIED IN PART.  Judgment as a matter of law is hereby ENTERED in favor of Defendant on Plaintiff's claims of constructive discharge and retaliation.  Defendant's motion on Plaintiff's claim for hostile work environment is DENIED.

BY THE COURT:


_____
s/J. Curtis Joyner
J. CURTIS JOYNER, J.